UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID FARRELL,

      Plaintiff

    v.

UNITED FINANCIAL CASUALTY
COMPANY d/b/a/ PROGRESSIVE
INSURANCE,

      Defendant

: CIVIL DIVISION
: NO. 3:16-CV-02180-RPC
:
: (JUDGE CONABOY)



FILED
SCRANTON
OCT 2 5 2017
Per_____
DEPUTY CLERK

**Memorandum**

## 1. Background

We consider here the motion (Doc.10) of Defendant United Financial Casualty Company for summary judgment in the above-captioned case. The parties have briefed their respective positions (Doc. 12 and 14) and this motion is now ripe.

This case is an action for bad faith pursuant to an insurance contract between Defendant and Plaintiff David Farrell. Plaintiff was involved in an auto accident with a third party tortfeasor, received the policy limits under the tortfeasor's policy of insurance, and submitted a claim for $35,000 in underinsured damages from Defendant. Defendant initially declined to remit that sum but, after further exchanges between the parties, ultimately

tendered $35,000 (the policy limits).

The parties have agreed that the following facts are not in dispute:[1]

1. Plaintiff David Farrell was involved in a motor vehicle accident with another driver on or about December 23, 2012;

2. Plaintiff was insured at that time under an automobile insurance policy issued by Defendant;

3. The policy provided up to $35,000 in under-insured motorist coverage per person;

4. The policy states, in pertinent part, that "If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury: (1) sustained by an insured person; (2) caused by an accident; and (3) arising out of ownership, maintenance, or use of an underinsured motor vehicle;

5. The policy defines "underinsured motor vehicle" as "a land motor vehicles or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the damage than an insured person is entitled to recover from the owner or operator of the motor vehicle because of bodily injury";

6. Plaintiff worked as a delivery driver and was within the scope of his employment at the time of the accident;

7. Plaintiff received workers' compensation

---

[1] These "undisputed facts" are derived by cross referencing Defendant's Concise Statement of Undisputed Material Facts (Doc. 11) and Plaintiff's Response (Doc.13) thereto.

payments from the State Workers' Insurance fund ("SWIF") as a result of the accident;

8. Plaintiff retained Atty. Scott Schermerhorn to represent him with regard to the accident;

9. Plaintiff's counsel first requested that Defendant open a UIM claim on April 12, 2016;

10. Dependent opened the UIM claim on April 12, 2016; and assigned it to Margaret Mary Burke, an experienced claim professional;

11. Plaintiff's contact with Defendant regarding the UIM claim was managed exclusively by his counsel;

12. On April 26, 2016, Ms. Burke wrote to Plaintiff's counsel to request information regarding the UIM claim for Defendant's evaluation;

13. Plaintiff settled his claim against the other driver involved in the accident for $100,000;

14. Defendant waived its subrogation rights and consented to the settlement by electronic mail on April 27, 2016;

15. On May 19, 2016 plaintiff's counsel transmitted some medical records and other information regarding the UIM claim to Defendant;

16. Ms. Burke reviewed the information that Plaintiff's counsel had transmitted;

17. Ms. Burke's log notes indicate that she understood Plaintiff's injuries to be a chin laceration and cervical, thoracic, and lumbar sprains and strains;

18. Ms. Burke's log notes indicated that bills aggregating to $78,592 had been submitted to

3

SWIF;

19. Ms. Burke included only $26,881,.24 of the $78,592 billed to SWIF in her assessment of the size of SWIF's lien;

20. Ms. Burke evaluated Plaintiff's claim as being worth $35,506 and $44,100;

21. Following her review of the documentation initially furnished by Plaintiff's counsel Ms. Burke requested Plaintiff's family doctor's records, Plaintiff's deposition transcript from the lawsuit against the tortfeasor, and confirmation that no other UIM coverage applied to Plaintiff;

22. By way of letter dated June 9, 2016, Plaintiff's counsel provided an affidavit of no additional insurance and the contact information of the court reporter who transcribed Plaintiff's deposition;

23. On July 11, 2016, Ms. Burke received and reviewed Plaintiff's deposition transcript;

24. After reviewing Plaintiff's deposition transcript, Ms. Burke called Plaintiff's counsel to discuss the UIM claim;

25. The aforementioned telephone discussion took place on July 12, 2016;

26. During the discussion of July 12, 2016 Ms. Burke told Plaintiff's counsel that Plaintiff's receipt of $100,0000 from the tortfeasor's insurance carrier had provided Plaintiff with a full recovery;

27. Plaintiff's counsel advised Ms. Burke that her understanding of the size of the workman's compensation lien was inaccurate by letter dated July 12, 2016;

28. Plaintiff's counsel advised Ms. Burke to

4

contact SWIF to confirm the true magnitude of the lien;

29. Ms. Burke contacted SWIF on July 12, 2016 to confirm the amount of the lien;

30. Ms. Burke was informed by a SWIF representative that the lien then amounted to $82,547.57 and that "do not pay" notations in SWIF's file were for internal use only;

31. The SWIF representative also informed Ms. Burke that Plaintiff's workmen's compensation claim was in mediation;

32. On July 13, 2016, Plaintiff's counsel and Ms. Burke spoke again regarding the UIM claim;

33. In the conversation of July 13, 2016 Ms. Burke informed Plaintiff's counsel that the SWIF representative told her that SWIF would waive its lien;

34. Plaintiff's counsel then told Ms. Burke that he intended to obtain an assignment of the lien and that the waiver was irrelevant to the UIM claim;

35. Ms. Burke then requested information regarding the assignment of the lien and additional medical records;

36. Plaintiff's counsel provided additional medical records including an Independent Medical Report obtained by SWIF by letter of August 3, 2016;

37. By letter dated August 5, 2016 Plaintiff's counsel provided a copy of SWIF's assignment of the lien to Plaintiff;

38. On August 12, 2016 Ms. Burke reviewed the additional medical records and the assignment and reevaluated Plaintiff's UIM claim;

39. By letter dated August 15, 2016 Ms. Burke transmitted a letter to Plaintiff's counsel that indicated the UIM policy limits would be tendered and also included a proposed release;

40. Plaintiff's counsel responded by letter dated August 19, 2016 that his client would not sign the release and provided payee information for the UIM settlement check;

41. On August 22, 2016 Defendant issued a settlement check for its UIM limit of $35,000 without requiring Plaintiff to execute a release; and

42. On September 29, 2016 Plaintiff filed the instant lawsuit against Defendant alleging insurance bad faith.

## II. Summary Judgment Standard:

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of

6

Bucks, 455 F.3d 418, 423 (3d Cir 2006)(citing Anderson, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas., 364 F. 3D 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. Celotex Corp. V. Catreet, 4177 U.S. 317, 330 (1986)(citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. At 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party. Abramson v. William Patterson College of N.J., 260 F. 3d 265, 267 (3d Cir. 2001) (citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854

7

N.1(3d Cir. 1990). "In considering a motion for summary Judgment, a district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**III. Discussion:**

The record thus far developed by the parties indicates that Defendant was apprised of Plaintiff's claim for UIM benefits on April 12, 2016 and that Defendant tendered the policy limits ($35,000)on August 22, 2016. Thus, Plaintiff received all benefits of his contract with Defendant within a bit over four months of making his claim known. The sole issue is whether Defendant's conduct during that time frame may appropriately be characterized as "bad faith" as that term is understood under 42 Pa. CSA § 8371 and Pennsylvania caselaw construing that statute.[2]

Plaintiff's allegation of bad faith is based upon his contention that once Defendant realized the size ($78,592) of the lien it was per se unreasonable for Defendant to further delay its' remittance of the UIM policy limits. Plaintiff contends that the delay from July 12, 2016 (when Defendant was made aware of the

---

[2] In actions based upon diversity of citizenships such as the instant case the substantive law of the forum state must be applied.

amount of the lien) until August 22, 2016 (when the check for the UIM limits was tendered to Plaintiff) evinces bad faith because it imputes to Defendant malicious self interest and an unwillingness to deal fairly with Plaintiff. Plaintiff does not regard Defendant's delay as derivative of any confusion on Defendant's part and asserts that the delay is evidence that Defendant lacked a reasonable basis for denying benefits and knew that it lacked a reasonable basis in terms of Verdetto v State Farm, supra.

Defendant asks the Court to find that the manner in which Plaintiff's claim was evaluated was per se reasonable and that any delay, however slight, was based upon its agent's confusion regarding the true size of the lien and its need to gather more information before tendering the policy limits. Defendant also argues that its request that Plaintiff sign a release at the time of settlement is a common practice in the insurance industry and, despite Plaintiff's attempt to impute a bad motive behind the request for a release, Defendant cites numerous cases that condone the practice.

Mindful that summary judgment should be granted only in cases where there is no genuine issue of any material fact (see F. R. Civ P. 56 (a), the Court must deny Defendant's motion. The Court perceives the question whether Ms. Blake's misstatement regarding

9

the size of the workman's compensation lien was derived from innocent misunderstanding or purposeful stratagem as one implicating a crucial material fact. A jury must pass on Ms. Burke's state of mind when she advised Plaintiff's counsel on July 12, 2016 that the lien amounted to only $26,881.24. If the jurors determine that there was an intentional effort to mislead Plaintiff into settling his case for less than the policy limits, an award of bad faith could be a reasonable result here. If the jurors determine that Ms. Blake's misstatement regarding the size of the lien was a result of honest mistake, the jurors might reasonably conclude no bad faith was present. The court, of course, expresses no opinion regarding the likelihood that Plaintiff can prove his case by the requisite clear and convincing evidence as required by Polselli v Nationwide, supra. An Order consistent with the foregoing Memorandum will be issued contemporaneously.

RICHARD P. CONABOY
United States District Judge

DATED: 10/25/2017